We'd like to get started with this court case. Lori G. Levin v. Retirement Board of the County Employees' and Officers' Annuity and Benefit Fund of Cook County Good afternoon, Your Honor. Clint Kristoff with me and Chris Hall on behalf of Lori Levin, who is here in the courtroom as well. Thank you. Good afternoon, Your Honor. My name is Vincent Fanelli, P-I-N-E-L-L-I. I'm here on behalf of the Appellee Retirement Board of the County Employees' and Officers' Annuity and Benefit Fund of Chicago, along with Ms. Sarah Beckman from my firm. Thank you, Mr. Fanelli. Whenever you're ready, Mr. Kristoff. Thank you, Your Honor. The issue before this court is a pure issue of law. Ms. Levin, who is a county employee for 22 years and is an annuitant of the county, elected to participate in the county funds health care plan, as was her right under Pension Code Section 9-239. She was rejected by the board because she thereafter, after her retirement from the county, she worked for the state for a few years. And the board has a policy, the county board has a policy of restricting participation, contrary to the statute, to only those whose last employer was the county. Ms. Levin challenged the board's actions, filed it as a class action for herself and all other county annuitants who were similarly entitled to participate. First of all, the board argues that that requirement, that the person seeking coverage must have last worked for the county or the Forest Preserve, is part of its administrative authority for the plan. I mean, that's what they say. What do you say to that? And she did. Your argument is that there are only two requirements. You must be an annuitant, and I think that everybody agrees that Ms. Levin is an annuitant. And the second is that you must choose to participate. Once you have met those two requirements you're in, that's your argument, essentially, right? Right. And at the time she left her county employment, she would have qualified from the first day on. But the fact is that participation, there's sort of a cascading list of how this applies here. Because we think it clear on its face that the provision that the board of policy, for want of a better term, conflicts with the straight language of the statute. Each of the funds annuitants who chooses to participate. Second, applying that, applying the board's restriction, violates the Constitution's Pension Protection Clause because it obviously diminishes or impedes participants' right to participate. Counselor, can I ask you a question? As far as Section A and Section B, now Section B really just limits or tells the board what they can do as far as paying a portion of any coverage that might be available, correct? Right. So, let me ask you this. Do we know for sure that she is eligible for a health care policy? I mean, they don't buy and sell policies at the annuity board. I mean, they're not responsible for that. They don't have a preexisting condition. You don't have to. There's no dispute that she would qualify for it. No, no. So, is that a given that she does qualify for some kind of health care policy that's in effect right now for her? Yes. The board did not assert that there was any other reason for rejecting her. Well, I'm asking you, though. Do you know that she qualifies for health care policy in effect for the county employees? Do we know that? We know that because it doesn't restrict it in any way. It's not like you have to apply for coverage. It's that you indicate that you want to participate in the funds plan, and then you participate. So, again, any Cook County employee ever once vested with your pension in Cook County, you can apply at any time to participate in the health care portion. Is that what you're saying? Yes. Any annuitant. Right. Any annuitant with the county. Yes. And that's one of the benefits of being an annuitant at the county. That's a protected benefit of being a participant in the fund. So, do you know what it is, what insurance coverage she has right now that she has a right to, you're saying? The fund provides a plan. She wishes to participate in that plan. Well, do they have one plan for all their annuitants? Yes. Doesn't it depend on your retirement date? No. Or what's in your contract of employment, whatever you have. As I understand it, and I believe it's online, findable, it's that plan. I forget whether it's Aetna now. Don't people have different plans, different annuitants have different plans? I believe they do not. In the county retiree health care plan, I believe there is one plan. It also, as we believe that the restriction is invalid as applied to any annuitant on this case. Second, cascading downward, it certainly cannot be validly applied to anyone who was a participant before the restriction was adopted. Even if the restriction was otherwise valid, when she left the county employment, she had, in fact, when she started with the county, she had a right to the benefits that were provided to participants at any time. Let me ask you this, the right you assert to health care, is that the same right that one has to a pension? Yes. The case is very clear on that. Yes. No question, there's no difference whatsoever. There's no difference. That's the Canova case. Cascading downward, A, it's invalid as applied to any annuitant. B, it's invalid as applied to anyone who was a participant before the restriction was adopted, even if it was valid. That's the Budell case. You're entitled to whatever benefits existed during your time as a participant. Third, as applied to anyone who retired while the provision before the restriction was in effect. That's the Matthews case. Somebody who retires in reliance on the existing benefits gets those for life. That's the protection. And finally, we believe, well semi-finally, we believe that it was never validly adopted at all. It was not done in any public proceeding. It was just stuck in a handbook. And, you know, that's not the way that we do administrative policies. How should it have been done? Pardon? How should it have been done? If they do have in fact, let's assume for the moment that they have the authority and that under the pension code 9-202 they have the authority to do it because they could adopt the rules and regulations necessary. So what should they have properly done other than put it in the handbook? They should have done it at a public meeting where they presented so that people would know that this was being considered and people would have had input. Pursuant to what authority though? The Open Meetings Act. I mean their administrative authority to adopt regulations is there's procedures that the fund has to go through like any other governmental body. Well, outside of the Open Meetings Act, do you know that there was any procedure when they adopted it? There were none. They don't assert that there were any other than sticking this in a handbook that was adopted. Was this requirement of being the last employer, was this a rule or regulation necessary for the administration of the fund? No. Why? They don't assert that they needed to do that. They don't assert that there was any necessary justification for having done it other than it was in the handbook. And indeed, it doesn't really protect the fund. People are entitled to what their benefits are. And if the fund had thought that there was a threat that by letting in anyone who was an annuitant, and the idea is once you're an annuitant, you're vested in your benefits and they can't be taken away just by the board's win. And this particular restriction is especially absurd when you consider that any county employee who retires, if the next day or in the next 50 years or whatever their life is, they take a job as a Walmart greeter or a crossing guard, a babysitter. Maybe babysitters are independent contractors. The statute or the code on it being an annuitant certainly doesn't include this provision of last employer. Right, it does not. No mention of it, nothing like that. So we think that for all of these reasons, and indeed the handbook provision, even the handbook at the record at page 406, the handbook says it's only a summary. As usual with an employee in annuitant handbooks, you get a handbook, and it has a preface that says, you know, this is just a summary. This isn't the definitive plan, blah, blah, blah, blah, blah. But the blah, blah, blah, blah, blahs mean that you can't impose by just sticking a provision in a handbook a restriction which is not provided for in the pension code. If you have any other, oh, there was one point that Judge Pantley, there were two points. Judge Pantley agreed with us that this is a pure issue of law, de novo review, and I don't think that they seriously dispute that one. The other one is that Judge Pantley said that the health care provision was not a contractual benefit, and I think that the Constitution, Canova, and all of the cases since Canova make it clear that health care is, that whatever benefits you have as a participant in a governmental retirement system in Illinois is by our Constitution a contractual, an enforceable contractual relationship that the benefits of which shall not be diminished or impaired. If the Court has any more questions, I'd be glad to answer them. Otherwise, I would reserve the rest of my time for rebuttal. Thank you, Mr. Bessoff. Mr. Dinelli? Good afternoon, Your Honors. Essentially, and I think Justice Cunningham touched on this in her first comments, this case really revolves around the language in Section 9-239 because all of the arguments made by plaintiffs flow from their contention that that provided her with a guaranteed right of health insurance coverage, and we obviously don't agree with that. What they're asking you to do is essentially rewrite that section to make it appear as if there is a guaranteed right to health insurance coverage, and that simply isn't borne out by the plain language of the statute. Let me ask you, Mr. Dinelli, is health insurance a benefit? Is health insurance coverage a benefit? Would you define it as a benefit? I think that depends on the context. If you're asking me is it a benefit of this fund, I would say no. Is it colloquially considered a benefit of employment? I would say it can be if the employer provides health insurance, but that's not what we have here because, first of all, the pension fund itself was not the plaintiff's employer. It was the county when she worked for the state's attorney's office. So there's no contractual relationship between the plaintiff and the fund, particularly with respect to health insurance. The only thing they can point to, which they do, and try to argue that it is a requirement, is the language of the pension code in 9-239. But when you look at that language specifically, it does not in any way, if you read the plain language of it, indicate that the legislature was guaranteeing health care coverage to annuitants like this fund. What it says, and all it did create, to the extent it created any obligation, was the right, not the right, I shouldn't say that, because the language that existed as of the date, the relevant dates here, was a permissive subsidy. The fund may provide a subsidy or may pay a subsidy. That's clearly permissive language. It's not mandatory language. It's not shall or must. It's permissive. The other question is the plan's requirement, I don't know what, obligation or responsibility to come up with administrative rules, extend to who is eligible. Does administration of the plan mean determining eligibility? Is that, are the two things the same? Your arguments seem to conflate eligibility with administration. Are the two things the same? Well, I think that eligibility falls under administration in the sense that in the Not necessarily. Your argument in my reading of it clearly conflates administration with eligibility. They argue that the two things are not the same. And I'm trying to figure out why do you think the two things are the same? Well, I think they're related. They're different aspects of the overall administration of the fund. Listen, any employer or any service provider that's providing health insurance has requirements for, you know, who can participate. Eligibility is part of that process. In other words, if you're not eligible because you're not an employee or you never were, well, then you're not eligible. You would never even come and apply. That's eligibility. Administration is how do we administer the plan. So amongst the people that are eligible, how do we administer it? Well, we administer it by enforcing the eligibility requirements. One, we administer it by putting in requirements. That's my point. And their argument is clearly different from that. They say that they are, that Ms. Levin is eligible. And the administrative aspect of what the fund should be doing would be other things, like determining which carrier they're going to contract with and how much they're going to pay for the premiums and, you know, how long the contract's going to be and that kind of thing. That's a very different thing than who's eligible. Well, I would say this, Judge, and we included in the record the administrative services agreement that we had with the entity that provides the health insurance coverage at issue, and it clearly states in there that the fund is responsible for determining eligibility of the muitants. So our contract with the carrier who provides the insurance says, the fund shall determine who's eligible. They're not determining what the fund is. Who does the fund derive that power from? Who gives the fund the power to determine who's eligible? I think that comes from their rulemaking authority because, remember, it's really important to consider the distinction here in the first place, which is, again, Section 9239 authorized the subsidy for people participating in county health care programs. The county is not the pension fund. It's a separate entity. This plan, this fund, in 1992 when the county said, we're getting out of the health care coverage business. We're not going to provide it to muitants anymore. And so the fund on its own stepped up and said, well, we'll provide it. They didn't do it because a pension code required them. They did it because they wanted to undertake that responsibility, and they did. And so in doing that … Don't administrative agencies get their power from the legislature, specifically through some kind of statutory enactment? Well, they do here under 9202. They have a general broad grant of rulemaking and regulation making to administer the fund. Can we talk about those for a minute? Sure. Are there written rules and regulations outside of the handbook for eligibility of health care? I don't know for certain, Judge. I don't want to say yes or no to that. All right. In addition to the handbook, there's an actual benefit plan document that is distributed to the retirees too. So they get a document from the provider that sets forth everything about the benefit plan. All right, let me ask you this. Outside of the last employer rule, let's assume for a moment the last employer rule is just not in place. All right. What other requirements does the fund look to to see if one is eligible for health care? Is there a list of criteria? Is there something you look to? Well, there would go to the specifics in their relationship with the provider that probably sets forth certain things regarding conditions and conditions and so forth. This decision was made by the board on the basis of the last employer rule, was it not? That's correct, Judge. And if there's some reason to determine that rule shouldn't be in place or whatever, should it be sent back to the board for reconsideration according to whatever else they have to consider? Well, I would say no, Judge, because, again, the 9239. I'm not even talking about 9239. Okay. I understand. That's just to subsidize something. I'm talking about the last employer rule. That rule not being in place. What other criteria is there to determine if someone can qualify or is eligible for health care? I would have to have the handbook and look at all the provisions. Okay, so my point is if that's not in place, the last employer rule, should the board look at this again and say, well, maybe there's other issues here? I don't know. Are there other criteria is what I'm trying to find out. The best I can say on that is I'm sure there are. I just can't articulate them to you at this point. I'm sorry. Okay. But I'm sure there are because, again, there's multiple providers. It's not just one provider. There's two providers. So people have choices. Well, that's what I was asking your opponent. I mean, what insurance would she be entitled to? Do we know? I don't know. Isn't that a big piece of this puzzle, though? Well, they never, again, it's their burden of proof to present evidence both to the board and to the court when this was reviewed. And they never presented any evidence as to what she was entitled to. No, no. No, they just said she's entirely covered under 9239 in the pension protection clause and therefore we have to give it to her regardless of whether she meets any other criteria. So a strict reading of 939 does not say she's entitled to coverage. Is that what you're pointing to? No, absolutely not. It doesn't even speak to coverage. The clause that they point to, if you look at it, excuse me, under subsection B, it's a clause. And it simply modifies the fund's voluntary ability to pay because it then says on behalf of fund annuitants who choose to participate in any. . . Well, choosing to participate is not a mandatory obligation. But under 239, excuse me, under 239, it's stipulated she's an annuitant. Correct? Yes, that's a fact. That's a fact. 239B states that the annuitant can choose to participate in any of the county's health plans. Okay? That's section 9-239. Now what's wrong? That section or something that's put in a handbook? Well. . . It's the handbook that takes her out. Well, with regard to. . . That handbook is not a statutory. . . No, it's part of a parcel of a health insurance program that the fund on its own decided to put in place. It's not. . . Well, that is. . . Yes, that's a principle, Judge. But I don't think it applies when there's clear, unambiguous language of a. . . In a handbook? No, of the pension code that speaks to whether or not you're entitled or even eligible, for that matter, for any health care coverage or any other benefit. And this language is unambiguous in that it does not mandate coverage. If the legislature had wanted to say that the pension fund at any other county had to provide health care coverage, they could have done that. They've done it in other statutes, and we've pointed those out in our brief, where they lay out the coverage and what the nature of it is and hospitalization and all that detail. This is a clause which, when you read the clause, it makes sense that they would have put it in there because they're talking about, we're going to allow you to subsidize if you're in a public . . . if you're getting coverage under a public plan. There's a lot of people who could retire and try to get a private plan because it's better or it has better coverage. And so the legislature said, well, okay, but we're not going to subsidize that. We'll subsidize if you participate in a county plan. That's a governmental plan. So there's reason for them to have put that clause in there. That makes sense. They didn't put it in there to mandate because they could have said it a lot clearer. By the way, we're also required to provide these people with health care coverage. It doesn't say that. And furthermore, if you look down at the other language with respect to this, there's nothing in there that says that you're automatically entitled to health care coverage simply because you're an annuitant. It's just not in there. And . . . Does Penova say that? I don't think it does, Judge. But what's important is all those cases, Penova, Underwood, the other Supreme Court cases, they talk about the pension protection clause with respect to health benefits. They all say the same thing about the clause doesn't create benefits. It protects benefits that are in place by virtue of a contract or a statute. Neither of those are present here, and they don't dispute that. There's no contract of issue here at all. And then the statute, which they have to rely on, which is 9239. I have another question. Yes. If we accept the board's argument that 202 grants it broad rulemaking authority to determine eligibility, is that limitless? I mean, could they determine what's the limit on that authority? I mean, how is that going to be exercised? Is there a limit to how it can be exercised? Well, I think it's only limited by any provisions of the provisions in the pension code. In other words, they can't exceed their authority of any other provisions in the codes. That's a limitation without question. They actually have to be within the confines of the law. They can't discriminate against people. They can't, you know, treat people differently that are similarly situated. I mean, there's all kinds of limitations under law. Counsel, do they exceed a basis or an objective for this rule, the last employer rule? What's the basis for that? Well, in my opinion, Judge, and I'm not aware that it's expressed in the record, but it makes some sense in that how can any employer who provides health insurance have a plan that allows people to leave employment, go to work for some other employer, be out of work for five years, come back. In this case, the plaintiff came back five years later, you know, after she retired, five years after retirement, many years after she stopped working for the county, and said, okay, I now want to be in your health insurance plan. That's financially unsustainable to be required to have to take people in who've left your employment, who've been gone many years, who haven't contributed any contributions to your fund, and then to expect you to fund them. It's not sustainable in the private sector.  So the decision is based, it's an economically based decision that the county is making, that the fund is making, that would cost so much money to allow a vested annuity back into the fund. Is that their underlying reason? I don't think that's the only reason. I think that's a reason to have the last employer rule. That's what I was suggesting there. As far as any other reasons, they felt from the beginning that that rule was important to have in place. And indeed, you know, prior to the county, prior to the fund having the administration of health care coverage, the county had it. And they had the same rule. And we pulled it off in our briefs. Our teachers' union, Chicago Teachers' Pension Fund. We're not bound by the fact that somebody else was doing it or they've been doing it since 2009. That's an interesting argument, but I'm not sure that that's what we would look to, because maybe they were doing it incorrectly and in violation of the statute since whenever it was they were doing it. So I don't know that that's helpful to your argument. Well, I just pointed out, Judge Marino, that certainly there's reasons that people do this and have the last employer rule. We pointed out other examples. So it's not like this pension fund just came out of the blue and created this rule. It's out there, and it's used in other contexts. I made my comment because in your brief you pointed out, you know, that this has been in place since whenever it was, and it has been in place for a very long time. But I think that is just an interesting fact. But I don't think it bears on whether or not it's validly in place or not. I think in wrapping it up, I would just say that all of the arguments, we didn't spend much time on the pension protection clause because it really wasn't addressed. But, again, it only flows if, in fact, there's a benefit here that was contractually entered into or that the fund was obligated to under the statute for there to be protection. And so if that's not the case, then obviously that pension protection clause doesn't apply, and that's our position. But most importantly, I think that in order to reverse the circuit court's decision, you would have to essentially read into the statute an interpretation that is just not consistent with the plain language of it. This provision was simply for a subsidy to pay for, and, in fact, only a voluntary subsidy, not a mandatory one. So we will respectfully ask the court to affirm the circuit court's decision. Thank you. Thank you, Mr. Penali. Mr. Frislow, brief rebuttal, please. The hypothetical where Ms. Levin leaves, retires from the county, she could have been on the county funds plan throughout for life. I don't think they would dispute that. She paid in. She paid in to the county fund over her employment term, 22 years. She did not. She's not a free rider in any respect. And, in fact, the county fund got a benefit because they subsidized the health care. They didn't have to pay for her health care for six to eight years after she left their employ. They don't suffer from that. The liberal interpretation doesn't just apply when we have a clear entitlement, although we think we clearly do here. The liberal interpretation in favor of pensioners is required, period. But I don't think we need to get to that point. The Chicago teachers are also a different aspect, and as you, Justice Cunningham, pointed out, we're not sure that they're right, but if they stuck it in in a handbook provision, or if it is part of the, because the teachers have a different health care plan, if you will, because the teachers is based on the employer making, based on the employer providing health care coverage, and so it sort of dovetails into itself. But regardless, she has an entitlement from the statute. The one thing that he points out. Is that based on 239? 239, yes. And it is not, the Constitution doesn't just protect if there is a contract, a written contract, and in fact, that's the Underwood case, which says that, and while I may disagree with the limitations Justice Simon put on that provision, Justice Simon clearly said, you get what the statute provides. She is entitled to participate. And once the county plan has chosen to provide a plan, Ms. Levin, as any other annuitant, has a right to participate. They do subsidize it in part, no question about it, and up until 93 they had to pay for 50% of the health care cost that was required of the fund. So we're not, this isn't just a, well we just say we're going to make it optional to do when you can do it whatever way you want. The fact was, until 1993, and maybe that's another group of people that you would say, they can't retrospectively apply this restriction to. There's just a host of reasons, all of them, that this restriction is invalid. As applied to anyone, and as applied to anyone who was a participant in 1991, in 2003, in 2008, based on their hire date, the fact is the restriction should be tossed, found unconstitutional, invalid. The court should reverse and send back for the court below to make at least appropriate notice to people that you do have this right to participate. And I'm sure there are plenty of other people who have been turned away or would want to participate in the plan. It is a UnitedHealthcare plan. In the meantime, I looked on their website and they have, I guess, two plans, a PPO plan and a choice plan that people can elect between, but they're both under UnitedHealthcare. And it's not based on whether you can qualify by your health condition. I mean, in the current age, you can't be turned away for anything. I guess they can prorate you if you have end-stage renal disease or something like that, but this is, we are within the Obamacare restrictions, I believe. Just let me ask the question that Justice Connors asked your opponent. So other than the failure to work to last be employed by the county of the Forest Preserve, if that restriction wasn't there, she would otherwise be eligible to participate in that plan? Yes. Any other questions? Thank you both for a very thorough and informative argument. The matter will be taken under advisement. We're adjourned. Thank you.